IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYMEYON HILL,<br><br>        Plaintiff,<br><br>    v.<br><br>TROTH, et al.,<br><br>        Defendants. | No. 2:22-CV-1817-TLN-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

        Plaintiff, a civil detainee proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Pending before the Court is Defendant Dr. Suzuki's motion to dismiss, ECF No. 17, Plaintiff's oppositions thereto, ECF Nos. 18 and 21, and Defendant Suzuki's reply, ECF No. 19.[1]

        In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen,

---

[1] Process directed to non-moving Defendant Troth has been returned unexecuted. See ECF No. 22.

395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56.  The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Furthermore, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

Finally, "the Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants. It is settled that the allegations of [a pro se litigant's complaint] however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers." See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (citation and internal quotation marks omitted; brackets in original). The rule, however, "applies only to a plaintiff's factual allegations." See Neitzke v.Williams, 490 U.S. 319, 330 n.9 (1989). "'[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" See Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

## I. BACKGROUND

### A. Plaintiff's Allegations

This action proceeds on Plaintiff's original complaint. Plaintiff alleges that, on September 14, 2022, he yelled "man down" and stated loudly that he was suicidal. See ECF No. 1, pg. 3. Plaintiff states that Defendant Troth responded by telling the plaintiff "Kill yourself nigger" and closing his window. See id. Plaintiff then states that he told Defendant Dr. Suzuki, the mental health clinician, that he was suicidal. See id. Plaintiff alleges that Dr. Suzuki responded, "So what? That's not my problem," and then walked away from Plaintiff's cell. See id. After this encounter, Plaintiff alleges that he "cut himself and was denied medical treatment for over 8 hours." See id. Plaintiff stated that Defendants are sued "in their individual capacity and their official capacity." See id. at 2. Plaintiff seeks monetary relief. See id. at 3.

### B. Procedural History

The Court found that the Plaintiff stated a claim that "Defendants were deliberately indifferent while Plaintiff was on suicide watch" and the claim was sufficient to survive the screening stage. See ECF No. 10, pg. 1.

On February 21, 2023, Defendant Dr. Suzuki filed a motion to dismiss on the grounds that Plaintiff cannot recover monetary damages for an official capacity suit, and on the grounds that Plaintiff failed to state a deliberate indifference claim. See ECF No. 17, pgs. 4-5. On March 2, 2023, Plaintiff filed an opposition to the motion to dismiss. See ECF No. 18. The opposition contained additional facts and allegations regarding Dr. Suzuki's conduct. See id. On March 13, 2023, Defendant filed a reply to support her motion to dismiss. See ECF No. 19. Defendant argued the additional facts and allegations presented by Plaintiff "should not be considered on a motion to dismiss because they were not alleged in the complaint." See id. at 2. On March 20, 2023, Plaintiff filed another opposition to the motion to dismiss. See ECF No. 21.

## I. DISCUSSION

Defendant presents two arguments in support of her motion to dismiss. See ECF No. 17, pg. 3. First, Defendant argues that Plaintiff's claim, as far as it pertains to her official capacity, should be dismissed because Plaintiff failed to state an official capacity claim and because Plaintiff is seeking monetary relief. See id. at 4. Second, Defendant argues that Plaintiff has "failed to plead sufficient fact[s] to state a deliberate indifference claim" against her in her individual capacity. See id. at 3.

### A. Official Capacity

The Eleventh Amendment prohibits federal courts from hearing suits brought against a state both by its own citizens, as well as by citizens of other states. See Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991). This prohibition extends to suits against states themselves, and to suits against state agencies. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A state's agency responsible for incarceration and correction of prisoners is a state agency for purposes of the Eleventh Amendment. See Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Hale v. Arizona, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (en banc).

///

///

The Eleventh Amendment also bars actions seeking damages from state officials acting in their official capacities. See Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1995); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam). The Eleventh Amendment does not, however, bar suits against state officials acting in their personal capacities. See id. Under the doctrine of Ex Parte Young, 209 U.S. 123 (1908), the Eleventh Amendment does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacities. See Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997). The Eleventh Amendment also does not bar suits against cities and counties. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.54 (1978).

Defendant argues that "without any allegation that Defendant's conduct was the result of a policy, Plaintiff's official capacity claim necessarily fails." See ECF No. 17 pg. 4. Defendant also argues that Plaintiff cannot be awarded monetary damages for claims against her in her official capacity. See id. The Court agrees. Plaintiff does not seek any specific injunctive relief. See ECF No. 1. Plaintiff's official capacity claim should be dismissed because the only specific relief Plaintiff requests is damages. See id. at 3. In his opposition brief, Plaintiff appears to consent to the dismissal of the official capacity claim and states that his original intention was "to place Defendant in her individual capacity" and that "plaintiff made a judicial error" by naming Defendant in both their official capacity and individual capacity. See ECF No. 18, pg. 1. Defendant Suzuki contends that Plaintiff's damages claim against her should proceed only in her individual capacity.

**B.      Failure to State a Claim**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). "However, pretrial detainees have not yet been convicted of a crime and therefore are not subject to punishment by the state. Accordingly, their rights arise under the Fourteenth Amendment's Due Process Clause." Sandoval v. Cnty. of San Diego, 985 F.3d 657, 667 (9th Cir. 2021) (citing Bell v. Wolfish, 441 U.S. 520, 535, n.16 (1979)).

A prison official violates the Fourteenth Amendment rights of a civil detainee if their actions are "objectively unreasonable." See Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015) (the court held there was no subjective requirement for a Fourteenth Amendment claim of excessive force). This objective standard extends to other Fourteenth Amendment claims by civil detainees. See Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1070 (9th Cir. 2016) (the court held the objective standard established by Kingsley extended to failure-to-protect claims). While Kingsley only specifically regarded excessive force claims and Castro only specifically regarded failure-to-protect claims, Gordon v. County, of Orange held that "logic dictates extending the objective deliberative indifference standard articulated in Castro to medical care claims." See Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124 (9th Cir. 2018).

When filed by civil detainees, claims of violations of the right to adequate medical care proceed under Fourteenth amendment and "must be evaluated under an objective deliberate indifference standard." See id. at 1125. "A heightened suicide risk can present a serious medical need" that is protected by the right to adequate medical care. See Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010); Atayde v. Napa State Hosp., 255 F. Supp. 3d 978, 988 (E.D. Cal. 2017). In Gordon, the Ninth Circuit articulated the rule for evaluating objective deliberate indifference with respect to medical treatment. The Court must consider the following elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.
>
> See Gordon, 888 F.3d at 1125.

The third element is only satisfied if the defendant's actions were "objectively unreasonable." See id. The plaintiff must prove "more than negligence but less than subjective intent— something akin to reckless disregard." See Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016).

Defendant argues that Plaintiff failed to state a claim with respect to the allegation that he was denied medical care for over eight hours. See ECF No. 17, pg. 1. Defendant argues that "Plaintiff generally states that he was denied care for an extended period of time, but provides no further allegations concerning Defendant's alleged action or inaction." See id. at 5. Defendant concludes Plaintiff "fail[ed] to state an Eighth amendment violation." See id. at 1.

To the extent Defendant's argument is premised on the standard for a deliberate indifference claim under the Eighth Amendment, the Court does not agree. As discussed above, Plaintiff is a civil detainee proceeding pro se. See ECF No. 1, pg. 1. Because Plaintiff is not a convicted prisoner, Plaintiff properly brings his claims under the protections of the Fourteenth Amendment rather than the Eighth Amendment. See Bell, 441 U.S. at 536.

Here, the Court finds that Plaintiff has adequately stated a claim under the Fourteenth Amendment. Plaintiff alleges that he told Defendant, the mental health clinician, that he was suicidal, and Defendant responded, "So what? That's not my problem," before walking away. See ECF No. 1, pg. 3. These facts are sufficient to plausibly indicate that Defendant made an intentional decision to leave Plaintiff unattended after Plaintiff revealed he was suicidal. These facts also are sufficient to plausibly indicate that the conditions put Plaintiff at a substantial risk of serious harm since he was left alone for an extended period after he indicated he was suicidal, which could increase the probability of a suicide attempt.

Lemire v. California Dep't of Corr. & Rehab. is instructive with respect to the third element of the Gordon rule. See Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1069 (9th Cir. 2013). In this case, the detainee committed suicide while in custody and his family filed suit. See id. The detainee "never expressed any suicidal thoughts" to his doctor before the incident but committed suicide when he was "left without supervision, along with his fellow inmates, for as much as three and a half hours." See id. The court did not grant the defendant summary judgment and held that there was a triable issue of fact as to whether leaving the detainee "for up to three and a half hours created an objectively substantial risk of harm." See id. at 1076.

///

    Here, Plaintiff claims that he disclosed his suicidal ideation to his doctor and that he was left without medical supervision for over eight hours.  See ECF No. 1, pg. 3.  Construing all factual allegations as true, the alleged conduct of Defendant here is more objectively unreasonable than the conduct of the defendants in Lemire because it is alleged that Defendant had more notice of Plaintiff's suicidal tendencies and left him alone for a longer period of time.

    Deloney v. Cnty of Fresno is also illustrative with respect to the third element.  See Deloney v. Cnty. of Fresno, No. 117CV01336LJOEPG, 2019 WL 1875588, at *1 (E.D. Cal. 2019).  In this case, a detainee committed suicide while in custody, and his family filed suit against several jail officials.  See id.  The detainee informed jail officials of his suicidal ideations and jail officials "recommended [him] to be transferred to a safety cell due for being a danger to himself but took no further steps to ensure his safety."  See id. at 2.  The detainee ultimately committed suicide and the plaintiff alleged that because "defendants did not take any further steps besides the safety housing transfer … they were deliberately indifferent to [the detainee's] serious medical needs since they were aware of or should have been aware of his suicidal ideations and should have done more to address the risk."  See id. at 7.  The Court held this complaint was sufficient to survive a motion to dismiss.  See id.

    The defendants in Deloney attempted to reduce the risk of suicide by transferring the detainee to a safety cell yet still failed to dismiss the plaintiff's claim of inadequate medical care.  See id.  Here, Plaintiff alleges that Defendant did not take any action to protect Plaintiff after he revealed his suicidal ideation.  See ECF. No. 1, pg. 3.  Thus, Plaintiff has sufficiently alleged facts to plausibly indicate Defendant did not take reasonable measures to abate the risk of a suicide attempt.

    Defendant claims that the complaint is insufficient because Plaintiff did not allege that Defendant even knew that Plaintiff cut himself, and thus that she could not be deliberately indifferent.  See ECF No. 17, pg. 5.  The Court is not persuaded by this argument.  Plaintiff's complaint alleges that after he told Defendant, a mental health clinician, that he was suicidal that he was "left in his cell to cut himself and was denied medical treatment for over 8 hours."  See ECF No. 1, pg. 3.  This allegation suggests that the Defendant, Plaintiff's clinician, had a clinical

duty to promptly attend to the health concerns of Plaintiff, but she acted with deliberate indifference and chose to deny him care for over eight hours.

Construing the allegations liberally, as the Court must, and drawing all reasonable inferences, Plaintiff's allegation is sufficient to survive dismissal. If Dr. Suzuki believes the evidence will show that she was not deliberately indifferent to Plaintiff's stated mental health concerns, she may make that argument in the context of a motion for summary judgment at a later stage of the proceedings. In the meantime, the Court finds Plaintiff's allegations sufficient to require Defendant Dr. Suzuki to answer.

### III.  CONCLUSION

Based on the foregoing, IT IS HEREBY RECOMMENDED as follows:

1. Defendant's motion to dismiss, ECF No. 17, be GRANTED to the extent the Court agrees that Plaintiff may not proceed on his damages claims against Defendant in her official capacity.

2. Defendant's motion to dismiss, ECF No. 17, as relating to claims against Defendant Suzuki in her individual capacity, be denied in that the Court concludes that Plaintiff plausibly pleads a cognizable claim for damages under the Fourteenth Amendment.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 12, 2023

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE